UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  15-21410 (AMN) |
|       PAUL FIANO, SR., | : | Chapter 7 |
|         *Debtor* | : | |
| | : | |
| | : | |
|       ABDUL MAJID, | : | Adv. Pro. No. 15-02054 (AMN) |
|         *Plaintiff* | : | |
| v. | : | |
|       PAUL FIANO, SR., | : | |
|         *Defendant* | : | |
| | : | |

## RULING AND MEMORANDUM OF DECISION

Before the court is an adversary proceeding commenced by Abdul Majid ("Mr. Majid" or the "Plaintiff"), seeking a determination that a debt owed to him by the defendant, Paul Fiano, Sr. ("Mr. Fiano" or the "Defendant") is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and/or 523(a)(4).

Following trial, on April 12, 2016, the parties submitted their respective post-trial briefs for the court's consideration.  For the reasons that follow, judgment shall enter in favor of the Plaintiff in the amount of Eleven Thousand ($11,000.00) Dollars, and that amount shall be non-dischargeable.

### I.    JURISDICTION, STANDING AND VENUE

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).   The Bankruptcy Court, in turn, has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District Court dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (I).  This Court has jurisdiction over

1

core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and may hear and enter

a final order in this matter subject to traditional appeal rights.  This memorandum shall

serve as the court's findings of facts and conclusions of law pursuant to Fed.R.Bankr.P.

7052.

      This adversary proceeding arises under Mr. Fiano's chapter 7 case pending in this

district.  Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1409.  Mr. Majid

has standing to seek the relief sought in the complaint because, as a creditor in the

chapter 7 case, he may object to the granting of a discharge pursuant to Bankruptcy Code

§ 523(c)(1).[1]

## II.   PROCEDURAL BACKGROUND

      On August 7, 2015, Mr. Fiano filed a voluntary chapter 7 bankruptcy petition.  ECF

No. 1.[2]  Mr. Fiano's Schedule F (a listing of non-priority unsecured claims), filed on August

21, 2015, identified Mr. Majid as a creditor holding an undisputed, unsecured claim of

$15,000.00 for a loan.  ECF No. 8, p. 15.  Mr. Fiano did not identify the claim as contingent

or unliquidated.  ECF No. 8, p. 15.  On October 6, 2015, Mr. Majid filed proof of claim

number 1-1 ("POC 1-1") in the amount of $15,000.00, stating the basis for the claim was

"funds obtained from creditor by misrepresentation and fraud."  POC 1-1.  No objection

to Mr. Majid's claim was filed.

      On October 22, 2015, Mr. Majid, representing himself and therefore proceeding

*pro se*, timely objected to the dischargeability of his claim by commencing this adversary

proceeding by complaint, setting forth facts in fifteen (15) numbered paragraphs.  AP-

---

[1] The Bankruptcy Code is found in Title 11, United States Code.
[2] References to the docket of the chapter 7 case appear in the following form: "ECF No. ___." References
to the docket of this adversary proceeding appear in the following form: "AP-ECF No. ___."

ECF No. 1.  The complaint did not particularize the relief sought or the applicable sections of the Bankruptcy Code, however, on the Adversary Proceeding Cover Sheet accompanying the complaint, Mr. Majid checked the boxes for causes of action under Bankruptcy Code § 523(a)(2), false pretenses, false representation, actual fraud, and Bankruptcy Code § 524(a)(4), fraud as fiduciary, embezzlement, larceny.  AP-ECF No. 1.  On October 23, 2015, Mr. Majid filed a document entitled "Complaint (Amended)" containing two numbered paragraphs and including a reference to Bankruptcy Code § 523.  The amended complaint sought a determination that Mr. Fiano owed Mr. Majid $15,000.00 and that it was non-dischargeable.  AP-ECF No. 3.  Thereafter, Mr. Majid filed a further amended complaint, dated January 7, 2016 (the "Final Complaint"), AP-ECF No. 12, containing sixteen (16) numbered paragraphs (again failing to specifically plead a claim for relief under Bankruptcy Code §§ 523(a)(2) or 523(a)(4)).  The Adversary Proceeding Cover Sheet filed as part of AP-ECF No. 12, indicated a cause of action under Bankruptcy Code §§ 523(a)(2) and 523(a)(4).

In considering the procedural posture of the parties, the court notes that, "[t]he Second Circuit has repeatedly advised leniency and liberality in construing pleadings filed by *pro se* litigants." *Young v. Choinski*, 15 F.Supp. 3d 194, 207 (D. Conn. 2014); *see Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008)("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers")(*internal citation omitted*); *see also*, *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)("courts must construe pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest")(internal citation omitted); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d

3

Cir.2005)("pro se litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover. It is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim."). Therefore, despite the lack of an explicit statement in the Final Complaint seeking relief under Bankruptcy Code §§ 523(a)(2) or 523(a)(4), the court interprets and construes Mr. Majid's complaint broadly and liberally to encompass a claim for non-dischargeability of a debt under those sections.

On February 1, 2016, Mr. Fiano filed an answer to the Final Complaint. AP-ECF No. 15. Trial was held on April 12, 2016.[3] During the trial, Mr. Fiano's tenant, Kenneth Muraski and Mr. Majid testified as part of the Plaintiff's case in chief. Mr. Fiano submitted his own testimony in defense of the allegations by Mr. Majid. Both sides introduced documentary evidence into the record.[4]

Following the trial and in accordance with a scheduling order, both parties filed briefs. AP-ECF Nos. 24; 25.

### III.    FINDINGS OF FACT

In accordance with Fed.R.Civ.P. 52 and Fed.R.Bankr.P. 7052, after review and analysis of the trial testimony and argument, the documents admitted into evidence, and examination of the official record of the bankruptcy case and the instant adversary proceeding, the court finds the following facts.

---

[3] The audio for the April 12, 2016 trial appears in the record as AP-ECF No. 21 and is available in MP3 format. All citations to the audio file of the trial are to the AP-ECF number of the recording and then to the location of the cited testimony (references are to elapsed time) as follows: AP-ECF No. 21 at hours:minutes:seconds.

[4] The exhibits will be referenced in the following form: "Plaintiff's Exh. __" or "Defendant's Exh. __" (as the case may be).

1.  The plaintiff, Abdul Majid, is an individual who resides at property located at 108 Vernon Street, Manchester, Connecticut. *Testimony of Abdul Majid*, AP-ECF No. 21 at 00:24:35 - 00:24:47.

2.  The defendant, Paul Fiano, is an individual who resides at property located at 12 Fiano Road in Bolton, Connecticut. *Testimony of Paul Fiano*, AP-ECF No. 21 at 01:36:05 - 01:36:14.

3.  Mr. Fiano owns a one-half interest in commercial property located at 550-552 Middle Turnpike East, also known as 548 Middle Turnpike East, Manchester, Connecticut (the "Property"). *Testimony of Paul Fiano*, AP-ECF No. 21 at 01:36:21 - 01:36:29.

4.  On November 12, 2014, Mr. Majid and Mr. Fiano met at the Property to discuss lease terms for the Property.  AP-ECF No. 12, ¶ 1 and 2; AP-ECF No. 15, ¶ 1 and 2.

5.  At the time Mr. Fiano met with Mr. Majid, there was an existing tenant, who eventually moved out of the Property in January or February of 2015. *Testimony of Paul Fiano*, AP-ECF No. 21 at 01:37:17 - 01:37:30.

6.  The parties agreed that Mr. Majid would rent the Property for $2,000.00 per month, starting at some point after the prior tenant vacated the Property.  AP-ECF No. 12, ¶ 4; AP-ECF No. 15, ¶ 4; *Testimony of Abdul Majid*, AP-ECF No. 21, at 00:58:35 – 00:59:15.

7.  Mr. Fiano requested Mr. Majid pay twenty-thousand dollars ($20,000.00) as a deposit to secure the location ("$20,000 deposit").  AP-ECF No. 12, ¶ 4; AP-ECF No. 15, ¶ 4; *Testimony of Paul Fiano*, AP-ECF No. 21 at 01:39:40 – 00:1:40:00.

8. Mr. Majid paid the $20,000 deposit by providing Mr. Fiano with three checks, *to wit*:

    a. a personal check dated November 12, 2014 in the amount of $5,000.00;
    b. a bank or cashier's check dated November 13, 2014 in the amount of $5,000.00; and
    c. a bank or cashier's check dated November 13, 2014 in the amount of $10,000.00.
    AP-ECF No. 12, ¶ 5; AP-ECF No. 15, ¶ 5; Plaintiff's Exh. B.

9. No written lease was signed by Mr. Majid or Mr. Fiano regarding Mr. Majid's proposed rental of the Property.  No written agreement was prepared or executed at the time Mr. Majid paid the $20,000 deposit. *Testimony of Abdul Majid*, AP-ECF No. 21 at 01:08:55 – 01:09:20; *Testimony of Paul Fiano*, AP-ECF No. 21 at 02:14:45 – 02:15:08.

10. In December 2014 or January 2015, despite receiving Mr. Majid's $20,000 deposit, Mr. Fiano began negotiations with a third-party to lease the Subject Property.  Mr. Fiano leased the Property to this third-party at a higher monthly rent of $2,500.00. *Testimony of Kenneth Muraski*, AP-ECF No. 21 at 00:17:20 - 00:17:30; 00:19:36 - 00:19:49; *Testimony of Paul Fiano*, AP-ECF No. 21 at 02:02:35 - 02:02:47.

11. There came a time, on or about January 12, 2015, when Mr. Fiano and Mr. Majid understood that they would not be entering into a lease together for the Property. *Testimony of Abdul Majid*, AP-ECF No. 21 at 00:36:50 - 00:37:04; *Testimony of Paul Fiano*, AP-ECF No. 21 at 02:00:46 - 02:01:04.

12. Mr. Fiano intended to return the Plaintiff's $20,000 deposit. His testimony to that effect includes the following:

Q:    When you finally leased it to someone else, did you take the position that it was a non-refundable [sic] or did you take the position at that point `I got to pay Mr. Majid back?'

A:      I wanted to pay him back.

Q:      Alright and you attempted to pay him back?

A:      Yes.

*Testimony of Paul Fiano,* AP-ECF No. 21 at 01:51:08 - 01:51:28.

Q:      What was your intent, did you really believe that was a non-refundable deposit at the time you took it?

A:      If I didn't have another tenant coming along, it would be one thing but the fact that it looked like we were getting another tenant, I'm good enough to give it back to him.

*Testimony of Paul Fiano,* AP-ECF No. 21 at 02:05:47 - 02:06:10.

A:      I've made at least two or three promissory notes to pay him.

Testimony of Paul Fiano, AP-ECF No. 21 at 02:00:18-02:00:24

Q:      So you've always intended to pay him back?

A:      Of course.

*Testimony of Paul Fiano,* AP-ECF No. 21 at 02:00:26 - 02:00:30

13. In January 2015, Mr. Fiano gave Mr. Majid a post-dated check for $20,000.00 and requested he hold the check until March. *Testimony of Abdul Majid*, AP-ECF No. 21 at 00:37:20 - 00:42:41; *Testimony of Paul Fiano*, AP-ECF No. 21 at 02:06:18 - 02:06:40; Plaintiff's Exh. C.

14. Mr. Majid never presented the $20,000.00 post-dated check to a bank; rather, Mr. Fiano subsequently provided him with three post-dated checks in the amounts of $2,000.00, $3,000.00 and $15,000.00. *Testimony of Abdul Majid*, AP-ECF No. 21 at 00:43:25 - 00:45:00; *Testimony of Paul Fiano*, AP-ECF No. 21 at 02:06:44 - 02:07:41; Defendant's Exh. 9.

15. Mr. Majid cashed the $2,000.00 and the $3,000.00 checks, but the bank did not honor the $15,000.00 check.   *Testimony of Abdul Majid*, AP-ECF No. 21 at 00:43:50 - 00:47:48; Defendant's Exh. 9; Plaintiff's Exh. D.

16. Despite the expressed intent to return Mr. Majid's money, Mr. Fiano spent the $20,000 deposit:

Q:    And when you got that $20,000.00, what did you do with that $20,000.00?

A:    Some of that I used to run my business, my monthly expenses in the real estate business average about $5,000.00 a month.  In addition to that, some necessary repairs on the building were to bring the electrical appliances up to code and simultaneously we lost one of the boilers in the basement and that had to be replaced, so quickly we went through a sizeable amount of money.

*Testimony of Paul Fiano*, AP-ECF No. 21 at 01:41:13 - 01:42:31.

17. Mr. Fiano contracted for the work to be done at the Property in January, 2015 and paid for the work in February, 2015 using Mr. Majid's $20,000 deposit:

Q:    Now most of these invoices are dated February 10th, February 15th, they are all February, is that correct?

A:    Yes.

Q:    And, this is when you paid them?

A:    Correct.

Q:    When did you have the work contracted, when did you go to these contractors and say, "come work on my building?"

A:    The furnace was in January.

Q:    Ok, before January 12th?

A:    It was in that time frame.

Q:    And what about the electrical work?

A:    That was over a period of a month, things to bring up to code.
…
Q:    Alright, what about the cleaning out, $1,200 cleaning out bill for when the restaurant left?

A:    That cleaning took over a period of a month also, cleaning the basement out and other areas.

*Testimony of Paul Fiano*, AP-ECF No. 21 at 01:49:01 - 01:50:10; Defendant's Exhs. 2, 3, and 4.

18. Mr. Fiano used $7,600.00 of Mr. Majid's $20,000 deposit to pay for the installation of a heating and cooling system at the Property. Defendant's Exh. 2; *Testimony of Paul Fiano*, AP-ECF No. 21 at 01:43:30 - 01:44:07.

19. Despite entering into several agreements to repay the funds, Mr. Fiano, at the time of filing bankruptcy, owed Mr. Majid an undisputed debt of $15,000.00.  ECF No. 8, p. 15; POC 1-1.

## IV.   <u>**GOVERNING LAW**</u>

Bankruptcy allows "honest but unfortunate debtors" an opportunity to reorder their financial affairs and get a fresh start. *Evans v. Ottimo,* 469 F.3d 278, 281 (2d Cir. 2006)(citing *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998)).  The statutory discharge of preexisting debts, as set forth in 11 U.S.C. § 727, is one of the primary ways that this fresh start is accomplished. Under 11 U.S.C. § 523(a), some pre-existing debts, that were not obtained honestly, are exempted from the discharge.  "A discharge under [Chapters 7, 11, 12, or 13] of this title does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586, 194 L. Ed. 2d 655 (2016)(referencing 11 U.S.C. § 523(a)(2)(A)).

Subsection (a)(2)(A) of § 523 provides, in relevant part:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
    (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by—
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition[.]
11 U.S.C. § 523(a)(2)(A).

In order to succeed on a cause of action under § 523(a)(2)(A), a creditor must establish the following elements:

(1) the debtor made the representations;
(2) at the time he knew they were false;
(3) he made them with the intention and purpose of deceiving the creditor;
(4) the creditor justifiably relied on such representations; and
(5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.
*In re Couloute*, 538 B.R. 184, 188 (Bankr. D. Conn. 2015)(citing *Universal Bank, N.A. v. Owen (In re Owen)*, 234 B.R. 857, 860 (Bankr. D. Conn. 1999).

"[T]he plaintiff bears the burden of proving those elements by a fair preponderance of the evidence." *Cooke v. Cooke (In re Cooke)*, 335 B.R. 269, 275 (Bankr. D. Conn. 2005). "To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *In re Couloute*, 538 B.R. 184, 188 (Bankr. D. Conn. 2015)(citations omitted).

Additionally, Bankruptcy Code § 523(a)(4) provides that a debt will not be discharged when such debt was obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4).  "A creditor seeking to establish nondischargeability under § 523(a) must do so by the preponderance of the evidence." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)(citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).

A necessary prerequisite for a determination of nondischargeability for fraud or defalcation under § 523(a)(4), is that the debtor was acting in a fiduciary capacity. Numerous courts have found that, "[t]he requirement of the existence of a fiduciary relationship is a special limit imposed only for findings of defalcation or fraud; no such fiduciary relationship is necessary for non-dischargeability resulting from larceny or

embezzlement." *Zohlman v. Zoldan*, 226 B.R. 767, 773 (S.D.N.Y. 1998); see also *Reilly*

*v. Miano (In re Miano)*, 265 B.R. 352, 356 (Bankr. D. Conn. 2001)("A debtor need not be

a fiduciary for a debt to be held nondischargeable for larceny or embezzlement"); *In re*

*Jardula*, 122 B.R. 649, 653 (Bankr. E.D.N.Y. 1990)("Section 523(a)(4) excepts from

discharge any debt arising from embezzlement.  The Code changes the prior law in that

the phrase 'while acting in a fiduciary capacity' does not qualify the word embezzlement

or the new category, larceny").   "Larceny is the fraudulent and wrongful taking and

carrying away of the property of another with intent to convert the property to the taker's

use without the consent of the owner." 4-523 Collier on Bankruptcy P 523.10 (16th 2016);

see *Ramos v. Rivera (In re Rivera)*, 217 B.R. 379, 385 (Bankr. D. Conn. 1998).

Embezzlement, under § 523(a)(4), is determined based on federal common law.

*3N Int'l, Inc. v. Carrano (In re Carrano)*, 530 B.R. 540, 558 (Bankr. D. Conn. 2015).  In

Connecticut, federal common law embezzlement has been defined repeatedly as "the

fraudulent appropriation of property by a person to whom such property has been

entrusted, or into whose hands it has lawfully come."  *Conn. Attorneys Title Insurance*

*Co. v. Budnick (In re Budnick)*, 469 B.R. 158, 176 (Bankr. D. Conn. 2012)(citing *In re*

*Rivera*, 217 B.R. 379, 385 (Bankr. D. Conn. 1998)).  "To prove embezzlement, the creditor

must show by a preponderance of the evidence (1) that the debtor appropriated the

subject funds for his own benefit and (2) that he did so with fraudulent intent or deceit." *In*

*re Budnick*, 469 B.R. at 176.  The fraudulent intent necessary under §523(a)(4) is that

which "involves moral turpitude or intentional wrong." *Bullock v. BankChampaign, N.A.*,

133 S. Ct. 1754, 1760, 185 L.Ed.2d 922 (2013)(internal citations and quotations omitted);

See also, e.g., W. LaFave, Criminal Law § 19.6(a), p. 995 (5th ed. 2010)("intent to

deprive" is part of embezzlement).  "Fraudulent intent may be determined from the facts

and circumstances surrounding the act." *In re Budnick*, 469 B.R. at 176.

## V.    **DISCUSSION**

### a.  **11 U.S.C. § 523(a)(2)(A)**

Here, Mr. Majid claims that Mr. Fiano fraudulently represented that he would lease

the Property to him.  After review of all the evidence, the court concludes Mr. Majid did

not prove that Mr. Fiano made a false representation at the time he requested and

accepted the $20,000 deposit.  The evidence presented at trial suggests that Mr. Fiano

intended to lease the Property to Mr. Majid at the time he paid the $20,000 deposit.  After

learning another tenant might pay a higher monthly rent, Mr. Fiano changed his mind

about renting the Property to Mr. Majid.  In short, Mr. Majid has not satisfied his burden

to prove that Mr. Fiano's statement that he intended to lease to Mr. Majid was false at the

time the representation was made.  Because of this, the court cannot declare any debt

owed Mr. Majid to be non-dischargeable under Bankruptcy Code § 523(a)(2)(A).

### b.  **11 U.S.C. § 523(a)(4)**

Mr. Majid did not specify which of the grounds under Bankruptcy Code § 523(a)(4)

his claim for nondischargeability is based; therefore, the court will review each possible

cause of action.  First, the court finds Mr. Majid failed to present evidence that Mr. Fiano

was acting in a fiduciary capacity.  As this prerequisite has not been met, the court will

not address the additional requirements for finding fraud or defalcation.

Even though the court finds that there is no evidence of Mr. Fiano acting as a

fiduciary, the debt may still be held nondischargeable, pursuant to § 523(a)(4), for larceny

or embezzlement.  As stated earlier, "[l]arceny is the fraudulent and wrongful taking and

12

carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." 4-523 Collier on Bankruptcy P 523.10 (16th 2016); see *Ramos v. Rivera (In re Rivera)*, 217 B.R. 379, 385 (Bankr. D. Conn. 1998).  In this case, the initial element of larceny is absent.  Mr. Majid did not submit sufficient evidence that would allow the court to conclude that Mr. Fiano's receipt of the $20,000 deposit was wrongful or without consent.

Mr. Majid has shown by a preponderance of the evidence that Mr. Fiano embezzled a portion of the $20,000 deposit.  Although Mr. Fiano lawfully received, the $20,000 deposit, Mr. Fiano's retention and use of the funds in January and February 2015, at a time when he knew he had no intention of leasing the Property to Mr. Majid, constitutes embezzlement.

To the extent Mr. Fiano argued that the $20,000 deposit was non-refundable and there was no obligation to return it, there was no evidence of this other than his own account.  His own testimony ultimately stands for the proposition that he intended to refund the money to Mr. Majid but became unable to do so once he decided to withhold Mr. Majid's money in order to pay for his own Property's improvements and repairs.  For example, rather than return the funds in January, Mr. Fiano kept the money, gave Mr. Majid post-dated checks and a promise to pay in the future, and then hired contractors to work on his Property, ultimately using Mr. Majid's money to pay them.

Mr. Fiano's act of retaining Mr. Majid's funds and becoming obligated to contractors, runs directly contrary to Mr. Fiano's statement, *expressed at trial*, that he always intended to pay back Mr. Majid.  From the circumstances and Mr. Fiano's actions, the court finds that Mr. Fiano's actual intent changed in January 2015 to a conscious

13

intent to convert the money for his own use.   Mr. Fiano testified that he paid the contractors in February 2015 using Mr. Majid's funds.

The evidence is clear that in February, Mr. Fiano willfully spent a total of $11,000.00 of Mr. Majid's $20,000 deposit.   Defendant's Exhibits 2, 3, and 4.

Based upon the foregoing findings and analysis, the court concludes that Mr. Majid established by a preponderance of the evidence the necessary elements to render a debt owed to him, in the amount of $11,000.00, as a debt for embezzlement that is non-dischargeable under Bankruptcy Code § 523(a)(4).   In relation to the balance of the debt claimed, Mr. Majid has failed to prove by a preponderance of the evidence that Mr. Fiano had the requisite intent to establish embezzlement under § 523(a)(4).

## VI.   <u>CONCLUSION</u>

For the reasons discussed above, judgment shall enter in favor of Mr. Majid, the Plaintiff, pursuant to 11 U.S.C. § 523(a)(4), and Mr. Fiano's debt to Mr. Majid in the amount of $11,000.00 is determined to be non-dischargeable.

Dated on March 31, 2017, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut